IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DARRYL D. RIGGINS, #184051, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:11-CV-422-WKW |
| | ) [WO] |
| | ) |
| DR. BATES, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Darryl D. Riggins ["Riggins"], an indigent inmate, challenging the adequacy of medical treatment provided to him for asthma during prior stints of incarceration at the Montgomery County Detention Facility.[1] Riggins names Dr. Bates and Quality Correctional Healthcare, Inc., the facility's contract medical care provider, as defendants in this cause of action. Riggins seeks declaratory relief and monetary damages for the alleged violation of his constitutional rights.

The defendants filed special reports and relevant supporting evidentiary materials, including affidavits and medical records, addressing Riggins' claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned reports as a motion for summary judgment. *Order of August 15, 2011 - Doc. No. 18*. The

---

[1] Riggins identifies the relevant terms of his incarceration as February 12, 2009 through March 1, 2009 and March 12, 2009 through March 29, 2009.

court likewise finds it appropriate to allow Riggins leave to file a motion for summary judgment in opposition to the defendants' motion. *See Doc. No. 60* and *Doc. No. 74*. Thus, this case is now pending on the defendants' motion for summary judgment and the plaintiff's cross motion for summary judgment.

Upon consideration of these motions, the medical records contemporaneously compiled with the treatment provided to Riggins and other evidentiary materials submitted by the parties, the court concludes that the defendants' motion for summary judgment is due to be granted and the plaintiff's motion for summary judgment is due to be denied.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment [to a moving party] if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when a party opposing summary judgment produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of [medical personnel]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Riggins is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate

4

where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the defendants. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003)

(citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Riggins v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Riggins fails to demonstrate a requisite genuine dispute of material fact in order to

preclude summary judgment in favor of the defendants.  *Matsushita*, *supra*.

### III.  DISCUSSION

Riggins alleges that the defendants acted with deliberate indifference to his asthma condition.  To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag,* 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment.").

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled.  *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir.1995).  Instead, something more must be shown.  Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of

> serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need ..., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have

actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether

9

government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

 Riggins suffers from paranoid schizophrenia, hypertension, seizures and asthma. He contends that the defendants denied him medication he deems necessary for treatment of his asthma. Initially, Riggins maintains that he received only a QVAR Inhaler as treatment for his asthma. *Complaint - Doc. No. 1* at 4. However, in his sworn motion for summary judgment, Riggins repeatedly states that he "was not given any of his asthma medications." *Doc. No. 60* at 2. The assertion made by Riggins with respect to denial of all medication is in direct contradiction to the statement contained in the complaint in which Riggins avers that he was prescribed and received a QVAR Inhaler for his asthma. Riggins presents no

explanation for the discrepancy of the statement in his complaint and contradictory statements set forth in his subsequent sworn response. This court may therefore disregard Riggins' response filed solely for the purpose of opposing summary judgment to the extent it directly contradicts a statement contained in his complaint. *Van T. Junkins and Associates v. U. S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see also McCormick v. Ft. Lauderdale*, 333 F.3d 1234,1240 n.7 (11th Cir. 2003) (contradictory affidavit submitted solely to defeat summary judgment may be disregarded by the court).

The contemporaneously compiled medical records submitted by the defendants address the allegations made by Riggins. These records demonstrate that medical personnel evaluated Riggins when he entered the jail, examined him each time he submitted requests for medical treatment, conducted routine checks of his blood pressure during which Riggins could inform the health care staff of any occurring issue, provided Riggins medication for his asthma in accordance with the orders issued by Dr. Bates and advised Riggins to immediately seek medical treatment if he believed such was necessary. During examinations performed on Riggins for complaints related to his asthma condition, medical personnel determined that Riggins was not in distress. *Evidentiary Submission in Support of July 29, 2011 Special Report - Doc. No. 12-8* at 1-2 and *Doc. No. 12-9* at 2. In addition, during the daily checks of his blood pressure conducted from February 13, 2009 until February 20, 2009, Riggins made only one complaint to medical personnel at which time he complained of a slight headache on February 14, 2009. *Evidentiary Submission in Support of July 29,*

*2011 Special Report - Doc. No. 12-10* at 1. Finally, a thorough review of the medical records establishes that medical personnel never diagnosed Riggins as suffering an actual asthma attack.

Dr. Bates maintains that he prescribed medication to Riggins for treatment of his asthma and issued these prescriptions in accordance with his professional judgment. Initially, Dr. Bates acknowledges that Riggins arrived from the state prison system on February 12, 2009 with "a prescription for Albuterol, Keep On Person (KOP)" but jail policy directs that "inmates are not allowed to keep medications on their person.... Mr. Riggins has mild asthma and ... [in his medical opinion] should be on inhaled glucosteroids [a.k.a., corticosteroids, such as QVAR]." *Defendants' Exhibit 1 to the July 29, 2011 Special Report - Doc. No. 11-1* at 2. Dr. Bates further states that he did not prescribe Albuterol, a bronchodilator, to Riggins because he deemed it too great a risk under the circumstances of Riggins' overall physical condition. *Id*. ("I did not feel that Albuterol was appropriate because it has been shown that mortality is increased with this drug" and is a drug which should be used sparingly in patients who suffer from high blood pressure and/or seizure disorders.). In addition, Dr. Bates advised that he "did not prescribe Singulair because [of his concern] about its side effect profile and poorly documented efficacy." *Id*. Dr. Bates did prescribe a QVAR Inhaler, an aerosol corticosteroid used to prevent asthma attacks, to Riggins upon his transfer to the jail in February of 2009. Due to this item being out of stock in the medical unit, Riggins began receiving this medication on February 17, 2009 and continued to receive the prescribed

dosages until his transfer from the jail on March 1, 2009. *Defendants' Exhibit A to the August 19, 2013 Supplemental Special Report (Medication Administration Record) - Doc. No. 53-3* at 8-9.

Riggins returned to the Montgomery County Detention Facility on March 12, 2009. A nurse performed the requisite initial health care evaluation of Riggins on March 13, 2009. After consulting with the attending nurse, Dr. Bates again prescribed a QVAR Inhaler and also prescribed Singulair for treatment of Riggins' asthma. Health care personnel obtained the prescribed medications from their supplier and began providing the prescribed dosages to Riggins on March 14, 2009. Riggins continued to receive the prescribed medications through March 29, 2009, the time relevant to this complaint. *Defendants' Exhibit A to the August 21, 2013 Supplemental Special Report (Medication Administration Record) - Doc. No. 58-1* at 8-10, 14. Nurse Donald Schrupp also advises that any medication retrieved from Riggins' personal property for provision to Riggins would not appear on the Medication Administration Report because it "would not have come from [the health care unit's] inventory." *Defendants' Exhibit 2 to the August 19, 2013 Supplemental Special Report - Doc. No. 53-2* at 3.

The medical records compiled contemporaneously with the treatment provided to Riggins establish that Dr. Bates prescribed medication, including a QVAR Inhaler and Singulair, for Riggins' asthma and health care personnel administered these medications to Riggins during his incarceration at the Montgomery County Detention Facility. With respect

to the treatment provided to Riggins for his asthma, Dr. Bates explains as follows:

> ... When I assume the responsibility for the care of a patient, such as the Plaintiff in this case, it is my duty and responsibility to assess his medical condition and to prescribe such care as may be appropriate. In so doing, it is important to review the records of prior treatment. It is not my responsibility, however, merely to continue prior treatment if I do not believe such treatment to be appropriate under the circumstances. Once the Plaintiff was admitted to the MCDF it became my duty to exercise my own clinical judgment with regard to his course of treatment.
> 
> The Plaintiff provided documentation that he received certain medications while [incarcerated in the custody of the Alabama Department of Corrections]. That has never been in question. The appropriate question, however, is whether or not he should have received such medication, and the records provide no documentation which would support the use of such medications. There are no peak flows and no documented asthmatic attacks. The use of medications alone does not constitute a diagnosis.
> 
> There have been no documented asthma attacks while Plaintiff was at the Montgomery County Detention Facility. In fact, he has a history of factitious seizures, indicating that he would sometimes fake symptoms. The medical records [Riggins] provided on the medical information transfer form clearly document "Pseudoseizures" as a diagnosis.
> 
> It has been my experience that people with asthma as severe as the Plaintiff claims to have would have required specialized treatment and/or hospitalization. That clearly has not been the case.
> 
> The medical literature [submitted with the initial special report] clearly supports my decision regarding treatment in this case. The CHEST article clearly states that "all national and international asthma treatment guidelines agree that the most commonly used inhaled bronchodilators, short acting inhaled B-agonist[s] [should not be used as a mainstay of maintenance therapy and] should be used exclusively on demand. ["Recommendations are that asthma should be controlled with anti-inflammatory therapeutic strategies so that the on-demand requirement for short-acting bronchodilators be infrequent and, in most cases, arbitrarily established at a level of two or three times per week or less. Maintenance treatment with long-acting inhaled B2-agonists is recommended only when asthma control cannot be achieved with optimal (moderate) doses of inhaled corticosteroids." *Defendants' Exhibit 2 to the July 29, 2011 Special Report - Doc. No. 11-2 at 5.*].
> 
> The Plaintiff has no confirming evidence that he ever experienced an

>   asthma attack while incarcerated at MCDF. A major difference in the situation between the Alabama Department of Corrections and the Montgomery County Detention Facility is the proximity of the inmate to the nurse and the availability of immediate health care. At the DOC there are sometimes great distances between the inmate and the medical provider. At MCDF the distances are extremely close, the nurses are always on duty [in the facility], and the inmate can be seen [by the jail's medical personnel] within minutes. This eliminates the need for "keep on person" medications.
>
>   Short and Long Acting Beta agonist [such as Albuterol] have been shown to be associated with sudden cardiac death and are not innocuous. Therefore, I am extremely reluctant to use such treatment.
>
>   In summary, the patient was never seen to have a true asthmatic attack while at MCDF, despite his claims otherwise. He had the ability to access nursing care at any hour of the day or night. In someone with a history of pseudoseizures I would be very reluctant to give him a medication with which he could harm himself....

*Defendants' Exhibit 1 to the October 23, 2012 Supplemental Special Report - Doc. No. 37-1* at 1-2; *see also Defendants' Exhibit 1 to the June 3, 2013 Supplemental Special Report - Doc. No. 46-1* at 2 (The B2-agonist class of "inhalers are called rescue inhalers for a reason. They are to be used on an as needed basis.... Q-var is an inhaled steroid and is considered first line therapy [in the treatment of asthma]. In most cases it may be the only drug needed in [the treatment of] mild to moderate asthma.... I rarely have ever prescribed Leukotriene inhibitors [such as Singulair] because I find them not be particularly effective. To the extent that such were used it was simply a continuation of what he had been given at the DOC.").

Under the circumstances of this case, the court concludes that the course of treatment undertaken by Dr. Bates did not violate Riggins' constitutional rights. The medical care Riggins received was certainly not "so grossly incompetent, inadequate, or excessive as to

15

shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Riggins simply fail to establish deliberate indifference by the defendants. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability. In addition, an inmate's allegation that prison physicians did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'... to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment). Dr. Bates prescribed medication to Riggins for treatment of his asthma. Riggins received the prescribed medication for the majority of his confinement at the Montgomery County Detention Facility. It is undisputed that the jail's medical care providers rendered treatment to Riggins in accordance with their professional judgment. Moreover, Riggins has failed to present any evidence which indicates the defendants knew that the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the

defendants acted with deliberate indifference to Riggins' medical needs. Consequently, summary judgment is due to be granted in favor of the defendants. *Carter*, 352 F.3d at 1350.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The plaintiff's motion for summary judgment be DENIED.

2. The defendants' motion for summary judgment be GRANTED.

3. Judgment be GRANTED in favor of the defendants.

4. This case be dismissed with prejudice.

5. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that **on or before May 30, 2014**, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

     Done this 16th day of May, 2014.

                                  /s/Charles S. Coody
                              CHARLES S. COODY
                              UNITED STATES MAGISTRATE JUDGE